## MEIGGS *et al. v.* SCANNELL.

In an action against boats and vessels under the statute, the service of process in the manner prescribed by statute, is equivalent to an actual seizure.

In such actions, it is not necessary that the vessel should be attached, in order to acquire a lien, as against subsequent purchasers.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action to recover from Scannell, sheriff of the County of San Francisco, a certain bark Madonna. The testimony shows, that one Conway had instituted suit against the Madonna, to recover damages resulting to his vessel from a collision with the former; that the suit was not commenced by attachment, nor had any attachment issued; that pending this suit, the plaintiffs purchased her, and went into possession; that after the sale to plaintiffs, Conway recovered judgment for the sum of one thousand three hundred and forty-eight dollars, and costs, and caused an execution to issue thereupon, which was levied by defendant upon the vessel, by seizing and taking her into actual possession. It further appeared, that the former owners of the bark had appealed to the Supreme Court from the judgment rendered in favor of Conway, and had filed a bond in the sum of three hundred dollars. The Court below rendered judgment in favor of plaintiff, for the possession of the vessel. Defendant appealed.

*R. S. Brooks* for Appellant.

A cause of action for collision is a lien against a vessel, irrespective of the statute, and this lien is not diverted by a sale of the vessel, whether before, or after suit.

An action to enforce this lien, may, by the statute, (Pr. Act, chap. 6,) be brought in the State Courts. The action is brought by summons and complaint. §§ 318, 319.

The attachment may issue at any time after, and is no way essential to the jurisdiction.

The Court has jurisdiction—may proceed to judgment, and has done so. Now, it seems absurd to say, that it has not the power to enforce the judgment.

Replevin does not lie against the sheriff for the property which the writ requires him to take. See Practice Act, 317, 318, 319 to 328, §§ 22, 35, § 210.

*Whitcomb, Pringle & Felton,* for Respondents.

The first point involved in this case is, whether the causes of action against boats and vessels enumerated in the three hundred and seventeenth section of the Practice Act, are liens against the boat, from the time of the accruing of the cause of action, or only from the time of the service.

This question lies at the bottom of the whole construction of the statute. If we hold these causes of action to be liens, it must be by interpreting the act, as conferring upon the District Courts admiralty jurisdiction, commensurate with the jurisdiction of Admiralty Courts in like cases.

We cannot hold these claims to be liens, unless we recognize them as admiralty liens, and enforce them by the principles of admiralty law, giving to the Court which entertains them, that complete jurisdiction as to the distribution of proceeds and the settlement of prior admiralty liens, which the admiralty law requires. This is the statement of one side of the question.

The other interpretation of the statute, which denies the existence of the lien, until the actual service of the vessel, recognizes an admiralty jurisdiction *pro tanto,* (as laid down in Averill *v.* Steamer Hartford,) so far, only, as is necessary to carry out the express purposes of the statute. It regards the statute as adopting the admiralty process of attachment, for the purpose, only, of subjecting the property seized, to the common law rules of decision. It is simply a new attachment process, to reach the property of absent or unknown defendants. We contend for this latter interpretation of the statute on the following grounds:

1. It is in accordance with the letter of the statute.

2. The statute is evidently intended, only to give a new remedy, and not to confer new rights.

3. The remedy granted, is suitable to the evils to be provided against, and sufficient therefor.

4. The contrary interpretation would lead to erroneous consequences, of too dangerous a character to be adopted, except of necessity.

5. The contrary interpretation would do violence to principles of law well settled, both in common law and admiralty law, and have never yet been departed from in any State in the Union.

6. The contrary interpretation would do violence to the words of the statute, and is contrary to its literal sense; whereas, the statute must be strictly construed.

1. The statute does not, by express words, create a lien. On the contrary, all its expressions are opposed to such an interpretation. It scrupulously avoids using the word lien, which is

used in the statutes of New York, Missouri, Michigan, Illinois, Indiana, Alabama, Kentucky, and Louisiana. Our act contents itself with giving a right of action against the vessel, "the vessel shall be liable," and defines the liability by providing, "that it may be attached as security," and the words of section three hundred and twenty-first, providing for this attachment, are the same words used in section one hundred and twentieth, which is the ordinary attachment act. These words clearly imply that, until the seizure, there is no lien—the "security" beginning as in ordinary cases of attachment, with the seizure. Moreover, the act gives a sort of lien or preference to seamen's wages, but is silent as to other demands—"*expressio unius est exclusio alterius.*"

This provision, then, is not to all intents an admiralty proceeding, it is simply an easy method of acquiring jurisdiction—it differs from the ordinary attachment process in this, that it dispenses with personal service; but, like the ordinary attachment, it fails in the presence of a higher claim. It fails where the property seized is claimed, or held by some other than the owner, master, consignee, or agent, by whom the contract was made, or liability incurred. It fails, therefore, where before the seizure, the *status* of the property has been changed, for then, new and innocent parties are cited into Court. It adopts admiralty proceedings *pro tanto*, so far, only, as is necessary for the purposes of the statute, that is, so far as to acquire jurisdiction by seizure of the property without personal service; but it has not departed from the common law rules of decision, which refuse to apply one man's property to pay the debt of another—and, as it would withhold its judgment where a superior admiralty claim interfered, so it would withhold its judgment likewise where the common law recognized a superior claim. Our Courts are bound to regard the common law as a "rule of decision," where not controlled by a distinct constitutional or statutory provision; and common law rights are not taken away here.

And, as so interpreted, the provision is suitable and sufficient for the evils to be remedied. It contemplates the seizure of a shifting, uncertain sort of property, where the owner is hard to reach, or has a foreign residence, and forces him into Court by compulsion of the seizure. It is a hard rule, but it is justified by the vagrant character of the property, and the uncertainty of the owner.

Finally, we contend that it is absolutely impossible to construe this statute as conferring admiralty liens, without departing from the strict reading of the statute. The advocates of such a doctrine, as we have already shown, must override much, and take much by implication. But, we are entitled to a strict construction where a remedy so novel is introduced—proceedings

so stringent and subversive of old doctrines, land-marks of the common law.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

This was an action of replevin for the bark Madonna.

The only question involved, appears to be, whether, in a suit against a vessel for any of the causes set out in the statute, it is necessary to attach her, so as to acquire a lien against subsequent purchasers.

The learned counsel for the respondent contends, that the statute of this State, authorizing suits to be commenced against boats and vessels, does not create a new right, but provides a remedy; that no lien is given by the statute, except the plaintiff attaches the vessel, as directed by the three hundred and twenty-first section of the Practice Act.

It makes no difference, for the purposes of this case, whether the statute actually gives a lien or not, for the service rendered, thing done, or supplies furnished. As soon as the vessel is seized by a Court of Admiralty, a lien attaches in favor of the party at whose suit the seizure is made. In Averill v. The Steamer Hartford, 2 Cal., 308, it was decided, that service of process in the manner provided by the statute, was equivalent to an actual seizure. Adopting this decision as correct, the lien of the plaintiff in the suit of Conway v. The Bark Madonna, attached as soon as service was had in that suit. I do not think that it was the intention of the Legislature to provide, that a lien should only be acquired by attachment; this would virtually be denying a right to creditors for small sums. It would be almost impossible for a mechanic or merchant of small capital or credit, who had a claim of a few hundred dollars against one of our large river steamers, or some sea-going vessel, to give the necessary bonds to detain her until his suit could be determined, and, in the meantime, she might be run off and sold free of all such debts or incumbrances.

The frequency of such practices, and the injustice resulting therefrom, was the reason for the passage of similar statutes in the West and South, and no doubt influenced the Legislature of this State in enacting the law under consideration. The inconveniences that may result from the construction which we have given, if any should arise, is a proper subject for legislative revision, but inasmuch as the rule has been so long settled, we deem it best to adhere to it.

Judgment reversed, and cause remanded.